IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>LAWRENCE TUITELE,<br><br>Defendant. | CR. NO. 13-00593 JMS<br><br>ORDER DENYING DEFENDANT'S SECOND MOTION FOR COMPASSIONATE RELEASE, ECF NO. 83 |

### ORDER DENYING DEFENDANT'S SECOND MOTION FOR COMPASSIONATE RELEASE, ECF NO. 83

### I. INTRODUCTION

Defendant Lawrence Tuitele ("Defendant") moves—for a second time—for compassionate release from Medical Center for Federal Prisoners ("MCFP") Springfield pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) ("Second Motion for Compassionate Release"). ECF No. 83. The court determines that Defendant has not demonstrated extraordinary and compelling reasons to warrant release and that a consideration of the applicable 18 U.S.C. § 3553(a) factors weighs heavily against release. Thus, based on the following, the Second Motion for Compassionate Release is DENIED.

## II. **BACKGROUND**

Defendant is a 64-year-old inmate incarcerated at MCFP Springfield, and is scheduled for release from custody on November 10, 2025. *See* https://www.bop.gov/inmateloc/ (last visited January 6, 2021).

On June 14, 2013, Defendant pled guilty to a six-count Information charging him with: (1) aiding and abetting the operation of an illegal gambling business; (2) conspiracy to distribute, and possess with intent to distribute, 50 grams or more of methamphetamine; (3) distribution of 50 grams or more of methamphetamine (3 counts); and (4) being a felon in possession of a firearm. *See* ECF No. 4; Presentence Investigation Report ("PSR") at ¶¶ 5-10, ECF No. 27 at PageID #126-27. On December 27, 2013, Defendant was sentenced to a total term of 180 months imprisonment, and a total term of five years of supervised release. ECF Nos. 24, 26.

On June 10, 2020, Defendant, acting pro se, filed his first motion for compassionate release. ECF No. 49. The Office of the Federal Public Defender notified the court that it would represent Defendant, and then filed a Supplement to the Motion for Compassionate Release on July 7, 2020. ECF Nos. 53, 55. On July 22, 2020, the Government filed its Response, ECF No. 59, and Defendant filed a Reply on August 3, 2020. ECF No. 64. At the court's request, the Government submitted an August 24, 2020 brief relating to the COVID-19 mitigation efforts

taken by MCFP Springfield, and Defendant filed a response on August 26, 2020. ECF Nos. 72, 73.

By order dated August 31, 2020, the court denied the first Motion for Compassionate Release.  ECF No. 74.  In that order, the court determined that given Defendant's age and serious co-occurring medical conditions, he demonstrated extraordinary and compelling reasons to support compassionate release. Nonetheless, after considering the applicable § 3553(a) factors, the court determined that "a consideration of those factors weighs heavily against Defendant's release." *Id*. at PageID # 669.

On November 18, 2020, Defendant filed his Second Motion for Compassionate Release.  ECF No. 83.  In addition to the arguments made in his initial Motion, Defendant argues that "since the denial of [Defendant's] first request, the conditions at MCFP Springfield have dramatically worsened limiting [Defendant's] ability to provide the necessary self-care to effectively manage his ongoing medical conditions and creating unreasonably harsh conditions of imprisonment."  ECF No. 83-1 at PageID ## 727-28.  Defendant's Second Motion for Compassionate Release also demonstrates that Defendant exhausted his administrative remedies.  *Id*. at PageID # 731; ECF No. 89.  The United States filed a response on December 9, 2020.  ECF No. 91.  On December 15, 2020, Defendant filed a reply and updated medical records showing that he had tested positive for

COVID-19 on December 10, 2020.  ECF No. 97-1 at PageID # 2369.  The medical records reflect that Defendant had "most of the symptoms of covid.  Muscle aches, fever, cough, lost of appetite, smell, and taste, and a sore throat."  *Id*. at PageID # 2367.

The court then held a December 18, 2020 status conference to discuss Defendant's condition and to set further briefing.  ECF No. 101.  Defendant filed a Second Supplement, ECF No. 102, along with updated medical records, on December 31, 2020.  ECF No. 105.  Apparently, Defendant has recovered and is doing well.  December 20, 2020 medical records state that "[upon exam, inmate was sitting in his room visiting with another inmate.  He did not have supplemental oxygen. . . .  He denies fever, chest pain, [shortness of breath], cough, loss of taste or smell, N/V/D, or any other COVID symptoms."  *Id.* at PageID # 2409.

### III.  **DISCUSSION**

**A.    Jurisdiction**

After this court denied Defendant's initial Motion for Compassionate Release on August 31, 2020, Defendant filed a pro se notice of appeal.  ECF No. 75.  That appeal remains pending, and raises the question as to whether this court has jurisdiction over the Second Motion for Compassionate Release.

"The filing of a notice of appeal is an event of jurisdictional significance—it confers jurisdiction on the court of appeals and divests the district court of its control over those aspects of the case involved in the appeal." *Griggs v. Provident Consumer Disc. Co.*, 459 U.S. 56, 58 (1982). This rule, however, has exceptions. *United States v. Cronic*, 466 U.S. 648 (1984), held that with an appeal pending, a district court retains "jurisdiction to entertain [a motion for new trial] and either deny the motion on its merits, or certify its intention to grant the motion to the Court of Appeals, which could then entertain a motion to remand the case." *Id.* at 667 n.42 (citations omitted). And that exception is now codified in Federal Rule of Criminal Procedure 37(a):

> If a timely motion is made for relief that the court lacks
> the authority to grant because of an appeal that has been
> docketed and is pending, the court may:
> (1) defer considering the motion;
> (2) deny the motion; or
> (3) state either that it would grant the motion if the court
> of appeals remands for that purpose or that the motion
> raises a substantial issue."

And as determined in *Cronic*, if a court elects the second option, it can "entertain the motion and deny it." Federal Rule of Criminal Procedure 37, 2012 Advisory Committee Notes. That is, the court may consider the motion on its merits (that is, entertain it) and deny it. *See United States v. Jackson*, 468 F. Supp. 3d 59, 64-65 (D.D.C. 2020) (applying rule in addressing motion for compassionate

release); *United States v. Lambert*, 2020 WL 6682998, at *1 (S.D. Ga. Nov. 12, 2020) (same); *United States v. Rankin*, 2020 WL 6720979, at *1 (S.D. Miss. Nov. 16, 2020) (same). Here, after careful consideration, the court would deny Defendant's motion even absent the pending appeal. The court thus elects option two.

**B.     Legal Standard**

Defendant moves for compassionate release under 18 U.S.C. § 3582(c)(1)(A), as amended by the First Step Act of 2018,[1] which provides as relevant:

> [T]he court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment . . . after considering the factors set forth in [18 U.S.C.] section 3553(a) to the extent that they are applicable, if it finds that—
>
>     (i) extraordinary and compelling reasons warrant such a reduction;
> . . . .
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission[.]

---

[1] Pub. L. No. 115-391, 132 Stat. 5194 (Dec. 21, 2018).

Thus, the court may reduce Defendant's sentence if: 1) Defendant has exhausted the required administrative remedies; 2) Defendant has shown that "extraordinary and compelling reasons" warrant the reduction; and 3) the reduction is consistent with applicable Sentencing Commission's policy statements. Here, Defendant has exhausted his administrative remedies.

The United States Sentencing Commission's policy statement, United States Sentencing Guideline ("Guideline") § 1B1.13, was promulgated before the First Step Act provided Defendants the ability to file a motion for compassionate release (and, without a quorum, the Sentencing Commission has been unable to amend the Guidelines post-First Step Act). Several courts have thus determined that the Guidelines lack any policy statement "applicable" to a defendant-filed motion for compassionate release. *See United States v. Jones*, 980 F.3d 1098, 1108 (6th Cir. 2020) (stating that Guideline § 1B1.13 "is not an 'applicable' policy statement when an imprisoned person files a motion for compassionate release"); *United States v. Gunn*, 980 F.3d 1178, 1180 (7th Cir. 2020) (stating that "because the Guidelines Manual lacks an applicable policy statement, the trailing paragraph of § 3582(c)(1)(A) does not curtail a district judge's discretion"); *United States v. McCoy*, 981 F.3d 271, 281 (4th Cir. 2020) (stating that when a defendant "exercises his new right to move for compassionate release on his own behalf," "§ 1B1.13 is not an 'applicable' policy statement at all"); *see also United States v. Brooker*, 976 F.3d

228, 237 (2d Cir. 2020) ("[T]he First Step Act freed district courts to consider the full slate of extraordinary and compelling reasons that an imprisoned person might bring before them in motions for compassionate release."); *but see United States v. Arceneaux*, 2020 WL 7230958, at *1 (9th Cir. Dec. 8, 2020) (mem.) (affirming district court's denial of compassionate release based in part on consideration of § 1B1.13(2)).

Previously, this court agreed that it could consider the "full slate" of extraordinary and compelling reasons, although for slightly different reasons. That is, the court determined that the Guideline commentary's fourth, catch-all provision (granting discretion to the BOP Director to determine whether other extraordinary and compelling reasons exist), applies equally to the court when ruling on motions for compassionate release. *See United States v. Hernandez*, 2020 WL 3453839, at *4 (D. Haw. June 24, 2020). Regardless of the ultimate reasoning applied, the court agrees with Defendant that the court is not bound by Guideline § 1B1.13's restrictions, but instead may make its own independent determination whether extraordinary and compelling reasons warrant a sentence reduction.

**C.     Extraordinary and Compelling Reasons**

Defendant bears the burden to establish extraordinary and compelling reasons that warrant compassionate release. *See, e.g.*, *United States v. Bogema*, 2020 WL 6150467, at *3 (D. Haw. Oct. 20, 2020) (citations omitted). Here, Defendant

(1) is 64 years old, and suffers from a number of medical issues, including chronic obstructive pulmonary disease ("COPD"), end stage renal failure (chronic kidney disease, stage VI), obesity, hypertension, obstructive sleep apnea, hyperlipidemia (high cholesterol), and degenerative lumbar disc; and (2) has contracted and recovered from COVID-19 while incarcerated at MCFP Springfield.

According to the Centers for Disease Control and Prevention ("CDC"), Defendant has three separate conditions, each of which places him at an increased risk of serious illness should he contract COVID-19: chronic kidney disease, COPD, and obesity. *See* https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited January 6, 2021). Further, an individual with hypertension "might be at an increased risk." *Id.*[2]

And, at 64 years old, Defendant is at a higher risk from COVID-19 complications. As stated by the CDC:

> The risk for severe illness from COVID-19 increases with age, with older adults at highest risk. For example, people in their 50s are at higher risk for severe illness than people in their 40s. Similarly, people in their 60s or 70s are, in general, at higher risk for severe illness than people in their 50s. The greatest risk for severe illness from COVID-19 is among those aged 85 or older.

---

[2] Further, although not listed by the CDC, obstructive sleep apnea may also contribute to an increased risk. *See* https://www.pulmonologyadvisor.com/home/topics/obstructive-sleep-apnea-osa/obstructive-sleep-apnea-may-increase-risk-for-coronavirus-disease-2019/ (last visited January 6, 2021).

9

https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/older-adults.html (last visited January 6, 2021).

In short, it is beyond question that Defendant's age coupled with his pre-existing medical conditions places him at a greatly increased risk of serious injury, or death, should he contract COVID-19.

But Defendant has contracted COVID-19 and recovered, a fact that counsels heavily against a finding of extraordinary or compelling reasons to warrant release. As stated by the CDC, "[c]ases of reinfection of COVID-19 have been reported but are rare." *See* https://www.cdc.gov/coronavirus/2019-ncov/if-you-are-sick/quarantine.html (last visited January 6, 2021). And the United States Department of Health and Human Services has stated that "of the millions of patients who have recovered from COVID-19, which is caused by a coronavirus, only a handful have been confirmed as having gotten the disease again. Based on the reported recurrence rate from the early stages of ongoing research, the chances of becoming reinfected appear to be very small." *See* https://combatcovid.hhs.gov/ive-had-covid-19 (last visited January 6, 2021). And a recent study by the University of Oxford and the Oxford University Hospitals NHS Foundation Trust found that those who previously had COVID-19 are highly unlikely to contract the illness again for at least six months following the first infection. *See* https://www.ox.ac.uk/news/

2020-11-20-prior-covid-19-infection-offers-protection-re-infection-least-six-months# (last visited January 6, 2021).  The National Cancer Institute agrees, reporting that the COVID-19 antibody "protective effect is strong and comparable to the protection afforded by effective SARS-CoV-2 vaccines, although developing protection from vaccination is much safer than from natural infection.  This finding suggests that people who have a positive antibody test result using widely available assays have substantial immunity to SARS-CoV-2 and are at lower risk for future infection." *See* https://www.cancer.gov/news-events/cancer-currents-blog/2020/coronavirus-antibodies-protect-against-future-infection (last visited January 6, 2021).[3]

       Taking into account Defendant's age, risk factors, and that he has already contracted COVID-19, the court concludes that she has failed to demonstrate that extraordinary and compelling reasons warrant compassionate release.

       At the next step, the court must examine the applicable § 3553(a) factors.  And, after careful review, the court determines that a consideration of those factors weighs heavily against Defendant's release.  *See United States v. Chambliss*, 948 F.3d 691, 693-94 (5th Cir. 2020) (stating that compassionate release is

---

[3] In his supplemental brief, Defendant cites two sources claiming that individuals are not protected from a second COIVD-19 infection.  *See* ECF No. 102 at PageID ## 2397-98 & n.4.  But Defendant is relying on April 20, 2020 and April 27, 2020 publications, eons ago considering the knowledge learned about COVID-19 since that time.  The court elects to consider the recent science.  And although the recent science cannot rule out that Defendant would be re-infected, it does suggest that it is highly unlikely that he would be so in the next six months.

discretionary and may be refused after a consideration of the applicable § 3553(a) factors).

**D.  Section 3553(a) Factors**

As relevant to this case, the § 3553(a) factors include: (1) the nature and circumstances of the offense and the history and characteristics of the defendant;[4] and (2) the need for the sentence imposed: (a) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (b) to afford adequate deterrence to criminal conduct; (c) to protect the public from further crimes of the defendant; and (d) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner. 18 U.S.C. § 3553(a)(1)-(2). And under the parsimony clause, the court must "impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth" in § 3553(a)(2).

Defendant was a significant operator of gambling rooms in Honolulu for a period of 20 years. He ran or operated various gambling rooms from 1993 until his arrest in 2013. *See* PSR ¶¶ 20-38, 55, ECF No. 27 at PageID ## 130-35, 139. He

---

[4] As part of the § 3553(a) analysis, the court considers Defendant's post-offense conduct, including his rehabilitation while in custody. *See Pepper v. United States*, 562 U.S. 476, 491 (2011). And while in custody Defendant has completed his GED or high school diploma and taken 27 educational courses. ECF No. 55-5 at PageID # 420. As the United States points out, however, Defendant was disciplined in 2013 and 2014 for lying or falsifying a statement, possessing an unauthorized item, and refusing to obey an order. ECF No. 59-1 at PageID # 476.

also arranged for the distribution of methamphetamine to his gambling patrons. One of Defendant's co-defendants, Lalotoa Sefo Lau, told investigators that Defendant "received 2 to 3 pounds of methamphetamine every 3 to 4 weeks." PSR ¶ 46, ECF No. 27 at PageID # 137. Further, when a search warrant was executed on Defendant's residence on January 29, 2013, agents recovered 222.8 grams of 99.7% pure methamphetamine and three firearms. PSR ¶ 48, ECF No. 27 at PageID ## 137-38. That same day, agents recovered 4,449 grams of 100% pure methamphetamine from Defendant's storage locker. PSR ¶ 50, ECF No. 27 at PageID # 138. Defendant admitted to investigators that he obtained the methamphetamine in the storage locker on behalf of another individual, and that person was supposed to retrieve the drugs from him. PSR ¶ 57, ECF No. 27 at PageID # 139.

At sentencing, Defendant received a four-level upward adjustment for his role in the offenses. *See* PSR ¶¶ 106, 112, ECF No. 27 at PageID ## 150-51. That is, he was found to be a leader/organizer of a game room with five or more participants, and a leader/organizer of the drug conspiracy, which also involved five or more participants. *Id.*[5]

---

[5] Although Defendant's criminal history is long in the past, it does reflect acts of violence. PSR ¶¶ 125-27, ECF No. 27 at PageID ## 152-53.

These facts certainly demonstrate that Defendant was a long-term gambling room operator in Honolulu, and was a significant distributor of methamphetamine. Further, Defendant still has a substantial portion of his sentence to serve—he has been incarcerated since his arrest in January 2013, and is not scheduled for release from custody until November 2025. *See* https://www.bop.gov/inmateloc/ (last visited January 6, 2021). Thus, he has over 4 years left to serve.[6] Reducing Defendant's sentence to time served, given the nature of his offenses, would severely undermine the goals of sentencing set forth in § 3553(a)(2). And this conclusion would not change when considering Defendant's post-offense conduct. Although his educational efforts while in prison are certainly commendable, they do not justify compassionate release when considered along with the other § 3553(a) factors.

---

[6] When evaluating the § 3553(a) factors, courts consider the amount of time remaining on a defendant's sentence—whether short or long—in determining whether to grant compassionate release. *See, e.g.*, *United States v. Pawlowski*, 967 F.3d 327, 330-31 (3d Cir. 2020); *Chambliss*, 948 F.3d at 694; *United States v. Maka*, 2020 WL 2544408, at *4 (D. Haw. May 19, 2020); *United States v. Bogdanoff*, 459 F. Supp. 3d 653, 659 (E.D. Pa. 2020); *United States v. Moskop*, 2020 WL 1862636, at *1-2 (S.D. Ill. Apr. 14, 2020); *United States v. Farmer*, 2020 WL 4057550, at *2 (N.D. Ohio July 20, 2020); *United States v. Steffey*, 2020 WL 3840558, at *1 (D. Nev. July 8, 2020).

In sum, the court finds that although Defendant has established the requisite extraordinary and compelling reasons, the court DENIES the Second Motion for Compassionate Release after considering the applicable § 3553(a) factors.

## IV.  **CONCLUSION**

For the foregoing reasons, Defendant's Second Motion for Compassionate Release, ECF No. 83, is DENIED.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaii, January 6, 2021.



/s/ J. Michael Seabright
J. Michael Seabright
Chief United States District Judge

*United States v. Tuitele*, Cr. No. 13-00593 JMS, Order Denying Defendant's Second Motion for Compassionate Release, ECF No. 83